UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00112-GNS-HBB

FRUIT OF THE LOOM, INC.                                                    PLAINTIFF

v.

EN GARDE, LLC                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 15), Plaintiff's Motion for Preliminary Injunction (DN 4), and Plaintiff's Motion for Leave to File a Sur-Reply (DN 25). For the reasons outlined below, Defendant's Motion to Dismiss is **GRANTED**, Plaintiff's Motion for Preliminary Injunction is **DENIED AS MOOT**, and Plaintiff's Motion for Leave to File a Sur-Reply is **DENIED**.

### I.     STATEMENT OF FACTS AND CLAIMS

Plaintiff Fruit of the Loom, Inc. ("FOL") is a global garment manufacturer which owns various trademarks registered with the U.S. Patent & Trademark Office ("USPTO"). (Compl. ¶¶ 7-9, 12-13, DN 1). Its marks include the word marks FRUIT and FRUIT OF THE LOOM, and other related marks with design elements that are used in connection with, *inter alia*, "clothing or textile goods, including T-shirts, underwear, activewear, and socks . . . ." (Compl. ¶¶ 12-13).

On July 8, 2015, Defendant En Garde, LLC ("En Garde") filed an intent-to-use trademark application with the USPTO for the word mark FRUIT OF THE TOMB to be used with "clothing, namely, t-shirts, pants, hats, socks, swim suits, and shorts . . . ." (Compl. ¶ 21

1

(internal quotation marks omitted)). FOL has filed an opposition with the USPTO Trademark & Appeal Board, which is still pending. (Compl. ¶ 23).

FOL has alleged that En Garde or someone acting on its behalf has registered the domain name fruit-of-the-tomb.com. (Compl. ¶ 25). En Garde has also purportedly begun selling apparel in its locality of Houston, Texas, and has established an online store through Shopify. (Compl. ¶ 26). According to FOL, "En Garde currently operates an online store selling apparel and handbags at http://fruit-of-the-tomb.co and http://fruit-of-the-tomb.myshopify.com," in which Defendant uses its FRUIT OF THE TOMB mark. (Compl. ¶ 28). En Garde is allegedly marketing and selling its wares on social media platforms such as Facebook and Twitter. (Compl. ¶ 29).

FOL filed this lawsuit alleging trademark infringement in violation of 15 U.S.C. § 1114, trademark dilution in violation of 15 U.S.C. § 1125(c), and federal unfair competition in violation of 15 U.S.C. § 1125(a). (Compl. ¶¶ 39-54). After FOL moved for a preliminary injunction, En Garde moved to dismiss this lawsuit due to lack of personal jurisdiction. (Pl.'s Mot. Prelim. Inj., DN 4; Def.'s Mot. Dismiss, DN 15).

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction and because of federal courts' exclusive jurisdiction over trademark law. *See* 28 U.S.C. §§ 1331, 1338.

## III. DISCUSSION

### A. Defendant's Motion to Dismiss

En Garde has moved to dismiss FOL's claims because this Court lacks personal jurisdiction over En Garde. (Def.'s Mot. Dismiss 2-11, DN 15). A plaintiff bears the burden of

proving that a court has personal jurisdiction over a defendant. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). To survive a motion to dismiss, a plaintiff must present a prima facie case of personal jurisdiction over the moving party. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 792 (6th Cir. 1996). In ruling on a motion under Fed. R. Civ. P. 12(b)(2) the Court may resolve the motion without an evidentiary hearing, but it must construe the pleadings, affidavits, and other evidence in the light most favorable to the plaintiff. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). A court should not weigh "the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (citations omitted).

A federal court has personal jurisdiction over a defendant if: "(1) the defendant is amenable to service of process pursuant to the forum state's long-arm statute and (2) the exercise of personal jurisdiction would not deny due process under federal Constitution." *Coleman v. Mary Jane M. Elliott, P.C.*, No. 3:14-CV-00640-CRS, 2015 WL 3407320, at *2 (W.D. Ky. May 21, 2015) (citing *Bird*, 289 F.3d at 871). At this stage of the litigation and because the Court is addressing this issue based upon written submissions only, FOL "need only make a prima facie showing of jurisdiction" to defeat En Garde's motion to dismiss. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen*, 935 F.2d at 1458-59).

1. *Kentucky's Long-Arm Statute*

En Garde asserts that it is not subject to service of process under Kentucky's long-arm statute, KRS 454.210. (Def.'s Mot. Dismiss 5-6). To obtain service of process on En Garde, KRS 454.210 must authorize personal jurisdiction over it. *See* KRS 454.210(3)(a)("When personal jurisdiction is authorized by this section, service of process may be made on such person, or any agent of such person, in any county in this Commonwealth, where he may be

found, or on the Secretary of State who, for this purpose, shall be deemed to be the statutory agent of such person.").

In *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), the Kentucky Supreme Court clarified the scope of KRS 454.210, which had been construed broadly by Kentucky courts. In *Beach*, the court explained the proper analysis of the long-arm statute is as follows:

> First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id.* at 57.

In its response to this motion, FOL avers that En Garde's conduct subjects it to personal jurisdiction under KRS 454.210(2)(a)(2). (Pl.'s Resp. Def.'s Mot. Dismiss 8, DN 9). In relevant part, the long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [c]ontracting to supply services or goods in this Commonwealth . . . ." KRS 454.210(2)(a)(2). With regard to En Garde's activities within Kentucky, FOL has asserted that En Garde has sold only one garment bearing the offending mark in Kentucky,[1] although FOL's counsel may have purchased another t-shirt from En Garde that did not bear the mark.

It is apparent that En Garde's sale of goods to only one buyer in Kentucky is sufficient to satisfy KRS 454.210(2)(a)(2). As the Kentucky Supreme Court has commented, "[a] plain

---

[1] En Garde disputes whether this t-shirt bore the alleged infringing mark. (Filteau Decl. ¶ 5, DN 15-2). FOL, however, has provided a photo of a t-shirt bearing graphics and stylized wording of the FRUIT OF THE TOMB mark. (Pl.'s Resp. Def.'s Mot. Dismiss Ex. H, DN 18-9).

4

reading of the statutory language produces the interpretation that the contract need not be made or executed 'in this Commonwealth,' but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011). The buyer's use of En Garde's page on the myshopify.com web platform was the means through which En Garde offered to sell its wares at the stated prices. When the buyer selected the item to purchase and paid for the item, En Garde had a contractual obligation to fill the order and mail the item to the purchaser who was located in Kentucky.

In *Beach*, the Kentucky Supreme Court addressed the "arising from" requirement found in KRS 454.210(2)(a). Rejecting a "but for" test, the court held that the proper test is whether there is a "*reasonable and direct nexus* between the conduct that caused [the plaintiff's] injury and [the defendant's] business activities in Kentucky." *Beach*, 336 S.W.3d at 59. Absent such a reasonable and direct nexus, there is no personal jurisdiction over a defendant. *See id.*

Applying that test to FOL's claims against En Garde, Plaintiff has presented sufficient evidence to show that its claims arise from the conduct of En Garde in this forum. A t-shirt was sold via the myshopify.com web platform and delivered to a purchaser in Kentucky. (Filteau Decl. ¶ 5). The subject t-shirt may have infringed on FOL's marks or FOL may have been otherwise injured as a result of that sale. Thus, FOL has satisfied its burden to show that this transaction falls under one of the enumerated grounds for exercising personal jurisdiction under Kentucky's long-arm statute.

### 2. *Federal Due Process*

To exercise personal jurisdiction over En Garde, the Court must next determine whether the requirements of due process are met—"whether the facts of the case demonstrate that the

nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under Sixth Circuit precedent, this Court is to consider the following criteria in making that determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### a. Purposeful Availment

In this case, En Garde contends that it has not purposefully availed itself of the privilege of conducting business within Kentucky "because its single sale and online activity do not establish the 'substantial connection' with the forum state that is necessary to meet the first prong of specific jurisdiction." (Def.'s Mot. Dismiss 7). FOL maintains that the purposeful availment requirement is satisfied by the following conduct of En Garde: "(1) by maintaining multiple websites, accessible in Kentucky, through which En Garde sells apparel online, including at least one sale in Kentucky; and (2) targeting [FOL] at its principal place of business in Kentucky through willful trademark infringement."[2] (Pl.'s Resp. Def.'s Mot. Dismiss 9).

---

[2] The parties appear to dispute whether the sale of a t-shirt to the person in Sturgis, Kentucky, was a strawman purchase made for the sole purpose of attempting to obtain personal jurisdiction over En Garde in this forum. As En Garde correctly notes, "a plaintiff may not manufacture jurisdiction by engaging in a sale merely to confer jurisdiction in a particular forum." *Mor-Dall Enters., Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 881 (W.D. Mich. 2014) (internal quotation marks omitted) (quoting *Dawson v. Pepin*, 1:99-CV-316, 2001 WL 822346, at *5 (W.D. Mich. Mar. 29, 2001)). *See also Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998) ("Only those contacts with the forum that were created by the defendant, rather than

"Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Different results should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (internal citation omitted). As a sister court has explained in analyzing personal jurisdiction over disputes involving internet transactions:

> In the internet context, the interactivity of the website determines whether personal jurisdiction is appropriate for an out-of-state defendant. There are three categories of interactivity for a website. The first category is a highly interactive website, which gives others the ability to download and enter into contracts. This category is sufficient for a Court to exercise personal jurisdiction. The second category is "a middle ground where information can be exchanged between the viewer and the host computer. In such a case, the court examines the level of interactivity and the commercial nature of the exchange of the information." The last category is where the defendant makes information available on an otherwise passive website. A "passive website is insufficient to establish purposeful availment for the purpose of due process."

*Visage Spa, LLC v. Salon Visage, Inc.*, No. 06-10756, 2006 WL 2130512, at *6 (E.D. Mich. July 28, 2006) (internal citations omitted) (internal footnotes omitted) (citation omitted). The Sixth Circuit has expressed caution in relying on the existence of website as evidence of purposeful availment because "[a]n Internet website by its very nature can be accessed internationally. . . . The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an 'attenuated' contact that falls short of purposeful availment." *Neogen Corp.*, 282 F.3d at 890 (citation omitted). As a sister court noted:

---

those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes. To hold otherwise would allow a plaintiff to manufacture jurisdiction over a non-resident defendant in any forum, regardless of how inconvenient, even when the defendant has not purposefully directed any activity toward the forum state." (citation omitted)). In the present context the Court must construe the facts in the light most favorable to FOL. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted).

> Federal Courts seem to make their jurisdictional decisions based upon the amount and nature of commercial activity the defendant engages in over the Internet. In addressing interactive websites, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website."

*Lexmark Int'l, Inc. v. Laserland, Inc.*, 304 F. Supp. 2d 913, 918 (E.D. Ky. 2004) (internal citation omitted) (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124).

In this case, En Garde's page on the myshopify.com web platform (which is hosted in Canada) appears to be more of an active website where it seeks to sell its goods to customers throughout the United States and potentially around the world. (Filteau Decl. ¶ 2). That alone, however, is not enough because there is no evidence that "the website is interactive to a degree that reveals specifically intended interaction with residents of [] [Kentucky]." *Neogen Corp.*, 282 F.3d at 890 (citing *Zippo Mfg. Co.*, 952 F. Supp. at 1124).

According to En Garde, its total sales between May 2016 and June 2017 amount to $3,760. (Filteau Decl. ¶ 4). As discussed above, it appears undisputed that En Garde's sole pre-litigation sale was for one t-shirt mailed to a purchaser in Sturgis, Kentucky. (Pl.'s Resp. Def.'s Mot. Dismiss Ex. H). Besides its web presence, there is no evidence that En Garde has had any other interactions with Kentucky residents. Thus, this isolated sale drastically differs from conduct reflecting purposeful availment by En Garde in Kentucky sufficient to authorize personal jurisdiction consistent with the requirements of due process.

The Sixth Circuit's decision in *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997), is instructive. Kerry Steel, a Michigan steel service center, contacted a Paragon Industries, an Oklahoma pipe fabricator, offering to sell approximately $300,000 in steel coils. *See id.* at 148. After the parties engaged in negotiations via telephone and fax, and the buyer accepted the offer via telephone. *See id.* The goods were delivered to the Paragon Industries'

8

warehouse in Illinois. *See id.* After the buyer refused to pay for the goods due to an issue with their quality, Kerry Steel filed suit in state court in Michigan. *See id.* Following the removal of the case to federal court, Paragon Industries moved to dismiss the claims due to lack of personal jurisdiction. *See id.* After the trial court dismissed the claims, Kerry Steel appealed. In affirming the dismissal and addressing the lack of purposeful availment by Paragon Industries, the Sixth Circuit explained:

> On the facts presented here, we think it clear that the plaintiff has not made a *prima facie* showing that the defendant purposefully availed itself of the benefits and protection of Michigan's law. Paragon has no employees or offices in Michigan, and there has been no showing that any Paragon employee has ever been in Michigan for the purpose of conducting business there. It was Kerry Steel that initially contacted Paragon in Oklahoma—and Paragon responded without leaving home, as it were. The Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Kerry Steel may or may not have reached out to Oklahoma, but in no way has it been shown that Paragon reached out to Michigan.
>
> The mere fact that Paragon entered into a contract with a Michigan corporation does not mean that Paragon purposefully availed itself of the "benefits and protections" of Michigan law. As the Court explained in [*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)], "an individual's contract with an out-of-state party alone" cannot "automatically establish minimum contacts."
>
> It is immaterial that Paragon placed telephone calls and sent faxes to Kerry Steel in Michigan. To borrow language employed by this court in [*LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989)], "[t]he telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions."
>
> Not only was there no "reaching out" by Paragon to the Michigan plaintiff, we have been given no reason to believe that Paragon intended to establish "continuing relationships and obligations" in Michigan. This is not a case like *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 911 (6th Cir.), *cert. denied*, 488 U.S. 926, 109 S. Ct. 310, 102 L. Ed. 2d 329 (1988), where the court upheld Michigan's exercise of jurisdiction over an out-of-state defendant on the ground that the "object of the [defendant's] contacts with Michigan [was] to have

> ongoing, far-reaching consequences in the Michigan dental services market." The purchase agreement between Paragon and Kerry Steel represents nothing more than an isolated transaction, as far as the record discloses. There is no indication in the record that Paragon intended to create an ongoing relationship in Michigan with Kerry Steel.

*Id.* at 151 (internal citations omitted).

The lack of purposeful availment by En Garde in this case is analogous to this Court's earlier decision in *Advanced Solutions Life Sciences, LLC v. BioBots, Inc.*, No. 3:16-CV-00709-CRS, 2017 WL 2114969 (W.D. Ky. May 15, 2017). In *Advanced Solutions*, the defendant, a startup company called BioBots, Inc. ("BioBots"), developed 3D bioprinters using the BIOBOTS mark. *See id.* at *1. The use of that mark, however, allegedly infringed upon a BIOASSEMBLYBOT mark owned by Advanced Solutions Life Sciences, LLC ("ASLS"). *See id.* BioBots sales to Kentucky residents consisted of one printer to a researcher at the University of Louisville[3] and some laboratory materials via BioBots' website. *See id.* at 2. ASLS filed suit in this district alleging, *inter alia*, trademark infringement under the Lanham Act. *See id.* at *1-2.

After being served with service of process, BioBots moved to dismiss the lawsuit due to lack of personal jurisdiction. *See id.* at *1. This Court concluded that BioBots' sale to Kentucky fell within KRS 454.210(2)(a)(2) and that ASLS's claims against BioBots had a direct and reasonable nexus to BioBots' sales to Kentucky residents. *See id.* at *3-4. In analyzing the due process requirement, however, this Court concluded that exercising personal jurisdiction over BioBots would violate its federal due process rights. *See id.* at 7. In reaching that conclusion, this Court reasoned:

---

[3] While BioBots had a website from which its printers could be purchased, the Kentucky sale occurred following e-mail and telephone correspondence between BioBots and the purchaser. *See id.* at *2.

> Courts have repeatedly held that as little as a single transaction can establish purposeful availment, particularly in cases involving a non-resident seller and a resident buyer. But the crucial distinction appears to be who reached out to whom.
>
> This case is distinguishable from the cases in which courts have found specific jurisdiction. BioBots has not welcomed the business of Kentucky residents on a regular basis, as was the case in *Neogen* where the defendant expected about fourteen contracts in the forum state every year. Rather, BioBots has only sold products to two Kentucky residents. This case is more like *Kerry Steel*, in which the plaintiff initiated the contact, the subject contract was an isolated transaction, and the defendant showed no intention of establishing continuing relationships in the forum state. Here, the customers reached out to BioBots to initiate these sales. The University of Louisville researcher initiated contact with BioBots when he sent it an email a few days after seeing a BioBots 3D bioprinter at a conference in Boston, Massachusetts. The Kentucky resident who purchased laboratory materials did so through BioBots' website, which can be accessed internationally and does not direct its content toward Kentucky residents in particular. "That the buyer's home state was Kentucky is a purely fortuitous consequence, not a purposeful choice" of BioBots. Moreover, each sale was an isolated transaction, rather than a continuing contract for goods or services that would intertwine BioBots with Kentucky.

*Id.* at *6 (internal citations omitted) (citation omitted).

The case sub judice appears indistinguishable from *Advanced Solutions*. En Garde did not engage in business with Kentucky residents on a regular basis, but only had one order shipped to a Kentucky resident prior to this lawsuit. The sale was initiated by one buyer on En Garde's web page, which unquestionably constitutes an isolated transaction. There is no evidence to show that this sale was intended to establish an ongoing relationship between En Garde and the purchaser.

While not referenced by FOL as the *Calder* effects test,[4] it argues that "En Garde has also availed itself of the privilege of acting in Kentucky because it has aimed its willful trademark infringement at [FOL] in [FOL]'s principal place of business in Kentucky." (Pl.'s Resp. Def. Mot. Dismiss 13). This test "requires that the out-of-forum defendant purposely direct intentional tortious conduct toward the forum states with the intent to cause harm within the forum state." *QSR Automations*, 2010 WL 1416700, at *3. "[A] plaintiff can establish personal jurisdiction when it alleges that the defendant 'expressly aimed' tortious conduct at the forum in question and the 'brunt of the harm' is felt there." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012) (citing *Calder*, 465 U.S. at 789). The Sixth Circuit has read this test narrowly, and "the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Mammoth Resource Partners, Inc. v. Phoenix Drilling, Inc.* No. 1:10CV-36-M, 2010 WL 2651079, at *3 (W.D. Ky. June 30, 2010) (internal quotation marks omitted) (citing *Air Prods. & Controls, Inc.*, 503 F.3d at 552).

In *Advanced Solutions*, this Court also rejected the application of the Calder effects test to prove purposeful availment. *See Advanced Sols.*, 2017 WL 2114969, at *5-6. Because the Court

---

[4] This test was recognized by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). This Court has previously described facts supporting the application of the test in that case as follows:

> [T]wo Florida newsmen allegedly defamed actress Shirley Jones, in a Florida-based tabloid, the *National Inquirer*. Personal jurisdiction was found over the defendants in California, despite their lack of activity there. Shirley Jones, a resident of California, was their target, and thus they intended to harm her there. Her career was based in California, and thus all injury to her professionally would occur in California. Also, it was shown that the *National Inquirer*'s circulation was greatest in California.

*QSR Automations, Inc. v. KRS Corp. LLC*, No. 3:09CV-242-S, 2010 WL 1416700, at *3 (W.D. Ky. Mar. 31, 2010).

views the facts of *Advanced Solutions* as very similar to the present case, the Court likewise concludes that *Calder* effects test does not alter this Court's conclusion that it lacks personal jurisdiction over En Garde. *See also QSR Automations*, 2010 WL 1416700, at *4 (rejecting the application of the *Calder* effects test because "[t]he problem is that there have been no 'minimum contacts' with Kentucky so that the exercise of jurisdiction over [the defendant] would not offend 'traditional notions of fair play and substantial justice.'" (quoting *Int'l Shoe Co.*, 326 U.S. at 316)). As in *Advanced Solutions*, there is no evidence that En Garde "expressly aimed" its actions at Kentucky or that Kentucky was the "focal point" of En Garde's allegedly wrongful conduct and the resulting harm. *See Advanced Sols.*, 2017 WL 2114969, at *6-7.

For these reasons, FOL has failed to meet its burden of proving purposeful availment. Because that requirement has not been satisfied, it is unnecessary for the Court to address whether FOL's claims arise from En Garde's activities and whether the exercise of jurisdiction over En Garde would be reasonable under these circumstances.

### B.     Plaintiff's Motion for Preliminary Injunction

FOL has also moved for a preliminary injunction to preclude En Garde from infringing on FOL's trademarks. Because the Court lacks personal jurisdiction over En Garde, the Court will deny this motion as moot.

### C.     Plaintiff's Motion for Leave to File Sur-Reply

Finally, FOL has moved for leave to file a sur-reply. (Pl.'s Mot. Leave File Sur-Reply, DN 25). "As many courts have noted, '[s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (citation omitted).

FOL incorrectly asserts that its sur-reply is necessary because of new arguments raised by En Garde, the Court disagrees. In its reply, En Garde addressed an exhibit provided in FOL's response upon which FOL relied in encouraging the Court's exercise of personal jurisdiction over En Garde. While FOL is critical of En Garde's reply, its reply "is entirely consistent with the proper purpose of a reply brief, to address the opposing party's arguments raised in a response brief." *Liberty Legal Found.*, 875 F. Supp. 2d at 797-98. Through its proposed sur-reply FOL seeks leave to respond on that issue,[5] which is viewed as an inappropriate attempt to have a last word on the issue. FOL's motion to file its sur-reply is denied.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss (DN 15) is **GRANTED**;

2. Plaintiff's Motion for Preliminary Injunction (DN 4) is **DENIED AS MOOT**;

3. Plaintiff's Motion for Leave to File a Sur-Reply (DN 25) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
August 25, 2017

cc: counsel of record

---

[5] During the telephonic conference on August 16, 2017, counsel for both parties made arguments about the subject transaction. Thus, even without the sur-reply, the Court is familiar with the parties' respective positions on the issues relating to this transaction.